**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREDERICK THATE,

                    Plaintiff,           **CASE NUMBER: 07-11370**

v.                                **HONORABLE VICTORIA A. ROBERTS**

GENERAL MOTORS CORPORATION,

                    Defendant.
_____

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Judgment Reversing Decision of Plan Administrator and Motion for Summary Judgment (Doc. #44). Plaintiff asks the Court to reverse Defendant's decision denying him a bridged length of service and employer-paid health care and life insurance coverage during retirement under a plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq*. Plaintiff also asks the Court to find that the equitable estoppel doctrine bars Defendant from denying him the requested benefits.

Also before the Court is Defendant's Motion for Summary Judgment on Plaintiff's equitable estoppel claim (Doc. #39). Defendant asks the Court to uphold its decision. Defendant also asks the Court to find that Plaintiff's remaining claims are barred by the statute of limitations.

Plaintiff's Motion is **DENIED** in part and **GRANTED** in part; Defendant's Motion is **DENIED**.

1

## II.    BACKGROUND

Plaintiff Frederick Thate brings this action against his employer, Defendant General Motors Corporation ("GM").  Plaintiff seeks employer-paid health care and life insurance coverage during retirement.

Plaintiff was first employed by GM on June 6, 1965, as a salaried employee in its Allison Gas Turbine Division ("AGT").  He continuously worked in that division until December 1, 1993.  Then, AGT was sold to a new company, Allison Engine Company, Inc ("AEC").  Plaintiff was advised that he could either accept employment with AEC or be separated from GM.  He accepted employment.  On November 24, 1993, Plaintiff received a Cover Letter and a GM-prepared Booklet entitled "Your Benefits and Status as a GM Salaried Employee Following the Sale of Allison Gas Turbine Division" (hereinafter referred to as the "Template").  Attached to the Template was an Exhibit A.  The Cover Letter indicated that the Template must be read in conjunction with the GM Benefits Book.

Plaintiff worked for AEC from December 1, 1993 until March 31, 1994; he was involuntarily separated due to a reduction in force.  Consistent with its written policy, GM attempted to place Plaintiff in a GM job.  No GM jobs were available and Plaintiff's status changed effective April 30, 1994 from Special Leave of Absence to a Special Separation - Return from Successor Company.  He also received six months of severance pay.

After his separation from AEC, Plaintiff participated in GM's Opportunity Awareness Program to find new employment within GM.  GM offered him a job on May 23, 1995 at its Powertrain facility in Bedford, Indiana.  On June 1, 1995, Plaintiff re-

commenced employment with GM.  Plaintiff says William Correll of Human Resources told him he would receive 5 weeks of vacation and "it would be as if he never left."

In March 1996, Plaintiff noticed an error on his benefits summary statement regarding the number of vacation weeks he would receive; the summary indicated that he would receive 2 weeks each year rather than 5 weeks (which accrued based on years of service and would correspond with a length of service of more than 20 years). Plaintiff says Correll advised him the error was the result of a new computer software program.  The same error was reflected on the benefits summary each year.  Plaintiff continued to complain; he says he was advised to disregard the error and that sometimes it takes awhile for the system to get updated.  Don Patnode, the General Supervisor of Finance, began to manually increase the amount of vacation time in the system.  Plaintiff took 5 weeks of vacation each year.  From 1995 through 2005, Plaintiff also received annual retirement projections which indicated he was eligible for a "30 and out" retirement.  A 2005 Fidelity statement reflects a hire date of June 9, 1965.

In February 2005, GM offered Plaintiff a window retirement (a voluntary early retirement package).  He was poised to accept the offer until he learned on March 17, 2005 -- one day before his deadline to accept -- that GM would not "bridge" his length of service because there was a "break in service" as of November 30, 1993.  Without the bridge to his original hire date of June 9, 1965, GM treated Plaintiff as if his employment with GM first began on June 1, 1995.  Because of the break in service and new hire date, Plaintiff would no longer be eligible for GM contributions to health care and life insurance costs during retirement.  Plaintiff appealed to the plan administrator, which upheld the denial of a bridge of Plaintiff's length of service.

Importantly, in 1988, GM instituted major policy changes which prohibited anyone hired after 1988 from retiring after 30 years unless certain other requirements were met. The new policy also terminated the right of anyone hired after January 1993 to receive employer contributions to health care and life insurance coverage after retirement.

After exhausting administrative remedies, Plaintiff filed this action alleging: Count I - Arbitrary and Capricious Conduct; Count II - Breach of Contract; Count III - Misrepresentation; Count IV - Estoppel; and Count V - Reimbursement of Court Costs and Attorney Fees. Plaintiff seeks reversal of the plan administrator's decision and summary judgment on Counts I, III, IV and V. Defendant also seeks summary judgment.

## III. STANDARD OF REVIEW

### A. ARBITRARY AND CAPRICIOUS STANDARD

In the Sixth Circuit, the Court's role in an ERISA case such as this is to (1) review Defendant's denial of Plaintiff's request for benefits based solely upon the administrative record, (2) apply the applicable standard of review, and (3) render findings of fact and conclusions of law. *See Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998). The Court may not admit or consider any evidence not presented to the administrator. *Id.*

A denial of benefits challenged under 29 U.S.C. §1132(a)(1)(B) is to be reviewed by the district court under a *de novo* standard, unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v Bruch*, 489 U.S. 101, 115

(1989).  When the plan administrator has the discretionary authority to construe and interpret the benefit plan, the standard of review is "arbitrary and capricious."  *Id.*  The deferential "arbitrary and capricious" standard requires a court to uphold the benefit determination if the plan administrator offers a reasoned explanation based on the evidence.  *University Hospitals v Emerson Electric Co.,* 202 F.3d 839, 846 (6th Cir. 2000).  The parties agree that the arbitrary and capricious standard applies here.

## B.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden to show that there is no genuine issue of material fact.  *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995).  To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149.  Alternatively, the movant may meet this burden by demonstrating

the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party meets its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.    CASE LAW AND ANALYSIS

### A.    STATUTE OF LIMITATIONS

ERISA does not contain a statute of limitations for claims seeking benefits under a plan governed by ERISA. When federal statutes are silent on limitations periods, federal courts usually borrow the most closely analogous statute of limitations from state law. See *Int'l Union, United Auto. Workers of Am. v Hoosier Cardinal Corp.*, 383 U.S. 696, 703-04, 86 S.Ct. 1107, 1112-13, 16 L.Ed.2d 192 (1966). A narrow exception to this borrowing rule exists when analogous state statutes of limitations would frustrate or significantly interfere with the implementation of national policies, or would be at odds with the purpose or operation of federal substantive law. *North Star Steel Co. v Thomas*,

6

515 U.S. 29 (1995).

With respect to ERISA claims, courts hold that the appropriate limitations period for claims for benefits is the limitations period prescribed for breach of contract actions in the state in which the claim is brought. See *Meade v Pension Appeals & Rev. Comm.*, 966 F.2d 190, 194-195 (6th Cir. 1992).

Defendant says that Indiana law governs the applicable statute of limitations because all relevant events regarding Plaintiff's special separation and rehire occurred in Indiana. Defendant applies a six year limitations period and says the period of limitations began to run on June 1, 1995, Plaintiff's new hire date, and expired on May 30, 2001.

Statutes of limitations are considered procedural, and the statute of the forum state will be applied even though the claim for relief arose in another state. The rule is well stated in Restatement (Second) of Conflict of Laws, Section 142, as follows:

> Whether a Claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable: (1) The forum will apply its own statute of limitations barring the claim.(2) The forum will apply its own statute of limitations permitting the claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. Restatement (Second) of Conflict of Laws § 142 (1988).

This general rule has been applied in contract and tort actions. Thus, Michigan law governs the applicable limitations period here if maintenance of Plaintiff's claim serves a substantial interest of Michigan and this claim would not be barred under the statute of limitations of Indiana.

Maintenance of the claim does serve a substantial interest of Michigan. Defendant's corporate headquarters is here; it employs many persons in Michigan; many of its administrative and employee records are here. Despite this Michigan connection, Indiana has a more significant relationship to the parties; Plaintiff's separation, rehire and employment occurred there. Thus, the Court must decide if this claim would be barred under Indiana's statute of limitations.

Indiana law provides three possible limitations periods for breach of contract actions. For contracts not in writing, six years are allowed. Ind. Code § 34-1-2-1. For "[a]ll actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary)," two years is the applicable limit. Ind. Code § 34-1-2-1.5. Finally, for all other contract actions, suit must be brought within ten years. Ind. Code § 34-1-2-3. Thus, contrary to Defendant's assertion that Indiana's six year limitations period applies, the Court finds that the ten-year statute of limitations would be applicable; Plaintiff's claim is based on a written employment-related contract.

When did this claim accrue? Defendant says that when Plaintiff began employment at GM Powertrain on June 1, 1995, 13 months after the date of his special separation, he was aware or should have been aware that his length of service would not be bridged. Defendant bases its assertion on verbiage contained in documents produced by Plaintiff in response to Defendant's Request for Production of Documents: (1) a 1991 edition of the Booklet entitled "Working with General Motors" and a subsequent undated edition (referred to as the "Booklet") and (2) the Template. The

1991 Booklet provides:

> Your length of service is broken by:
> - A special separation. However, if re-employed within the succeeding 12 months, length of service will be adjusted upon recommendation of your employing unit. p. 5.

The subsequent edition states:

> Your length of service may include the following:
> - All recognized service preceding certain separations (as well as time absent under some circumstances) if re-employed within 12 months.

> Your length of service is broken by:
> - Special Separation. However, if re-employed within the succeeding 12 months, length of service will be determined by the conditions and circumstances of the individual case. pp. 16-17.

Under the heading entitled "Special Separation," the Template says:

> Under most circumstances, a Special Separation will break your length of service. If, however, you are rehired by a GM employing unit within 12 months following the separation, your length of service will be determined by the conditions and circumstances of your individual case. . .

> Template, p. 25.

A chart on page 4 of the Template says:

> You will not be eligible for GM contributions for health care and life insurance coverage in retirement unless you are (1) eligible to retire from GM and receive such coverages in retirement at the time employment begins at the successor company, or (2) terminated, other than for cause, by the successor company within three years of the date of transfer, return to GM, and retire from GM with eligibility for such coverages in retirement on the date of such retirement. All benefits depend upon the terms and conditions of the plans in effect at the time of termination.

Plaintiff says when he returned to work on June 1, 1995, William Correll of Human Resources at GM Powertrain in Bedford, Indiana told him that "everything was just like it was before" and that he would get everything as though he had always been working at GM. Plaintiff says about a year after his return, he started requesting annual

retirement projections. Those projections all showed him receiving a "30 and out" retirement. In 2005, he was issued a Fidelity benefit information statement that recorded his date of hire as June 9, 1995. Plaintiff says he received an early retirement offer in January 2005, which had a response deadline of March 18, 2005. He learned for the first time, on March 17, 2005, that he would not receive employer-paid health and life insurance in retirement. Plaintiff says his claim accrued on that date.

MCL 600.5807 governs the statute of limitations for breach of contract actions in Michigan:

> No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section. . .
>
> (8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

Michigan abrogated the common-law discovery rule, which allows tolling of the statutory period of limitations when a plaintiff could not have reasonably discovered the elements of a cause of action within the limitations period. *Trentadue v Buckler Automatic Lawn Sprinkler Co.*, 479 Mich 378 (2007). Thus, MCL 600.5827 solely governs the accrual of actions. It states:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

The Court agrees with Plaintiff that the wrong occurred on March 17, 2005. The "wrong" is the denial of a bridged length of service and employer-paid health and life insurance in retirement. This wrong occurred when Plaintiff was first advised by

10

Defendant that he would not receive such benefits. Plaintiff's Complaint, filed on March 29, 2007, was well within Indiana's 10-year statute of limitations. Since maintenance of the claim would serve a substantial interest of Michigan, and since Plaintiff's claims are not barred by Indiana's statute of limitations, it likewise is not barred by Michigan's 6-year statute of limitations.

The Court denies Defendant's Motion for Summary Judgment on this ground.

## B.    ARBITRARY AND CAPRICIOUS CONDUCT

Plaintiff contends that Defendant's decision to deny him bridged service was arbitrary and capricious. To support his argument, Plaintiff relies on what he considers to be an ambiguity in Defendant's documents. He says the ambiguity between provisions of the Template and the Booklet required the plan administrator to agree there was a three-year window within which Plaintiff could return to GM and retain his continuous length of service. Plaintiff also says that GM policy permits employees to tack on unused vacation time, if the employee is paid for the time, to prevent a break in service. Since Plaintiff was paid for 29 unused vacation days, and there are 22 working days in the month of May, Plaintiff says he had a sufficient number of vacation days to prevent a break in service. Defendant says Plaintiff was entitled to 29 vacation days from his new employer, not GM, thus his unused vacation time did not alter GM's bridging policy. Defendant also says it acted consistent with its long-standing written employment policy, notwithstanding the provisions of the Template, in declining to bridge Plaintiff's length of service, and that nothing about its decision was arbitrary and capricious.

If a benefit plan affords discretion to an administrator or fiduciary, the denial of benefits is reviewed only to determine if it was arbitrary and capricious. *Marks v Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003). It is undisputed that the health care and life insurance plans give GM discretionary authority and GM's denial of eligibility is not arbitrary and capricious if it is rational in light of the plans' provisions. *Id*. at 456-457.

The Template states that under most circumstances, a special separation would break an employee's length of service unless they were rehired by a GM employing unit within 12 months following the separation, in which case length of service would be determined by the conditions and circumstances of an employee's individual case. pp. 15-16. The Booklet also states that an employee's length of service would be bridged only if he is re-employed within 12 months following a separation. However, the chart on page 4 of the Template states that an employee will not be eligible for GM contributions for health care and life insurance coverage in retirement unless: (1) they are terminated, other than for cause, by the successor company within three years of the date of transfer; and (2) they return to GM, and retire from GM and are eligible for such coverages in retirement on the date of such retirement. Thus, it is not clear whether the Template extended the window of opportunity for bridging from 12 months to 36 months.

In *Smiljanich v. General Motors Corporation*, 182 Fed. Appx. 480 (6th Cir. 2006), the 6th Circuit interpreted identical language to the Template here. That case also dealt with the same provisions of the General Motors Salaried Health Care Program and the General Motors Life and Disability Benefits Program present here. The *Smiljanich* court

concluded there was an inconsistency in the documents describing Defendant's bridging policy, but noted that the booklet did not explicitly modify the normal bridging policy. In the absence of such evidence, it was reasonable for GM to give effect to its generally applicable policy. Thus, the *Smiljanich* court found that GM's resolution of the inconsistency was reasonable and entitled to deference.

This Court holds that while there is an ambiguity between the provisions of the Template and the Booklet, there is no evidence that Defendant intended the chart on page 4 of the Template to modify its normal bridging policy. In fact, the cover letter to Plaintiff said the Template was not a stand-alone document and must be read in conjunction with the current GM Benefits Book. In the absence of evidence that the Template was intended to supercede the Booklet, it was reasonable for GM to give effect to its generally applicable policy. Defendant had the discretionary authority to resolve the conflict. See *Moos v Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995)("we grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms").

The unused vacation time issue was not raised by Plaintiff in his administrative appeal or considered by the plan administrator. Under the deferential standard, the Court may not consider this evidence. *See Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998)("The Court may not admit or consider any evidence not presented to the administrator") . The Court finds that Defendant's refusal to bridge Plaintiff's length of service was neither arbitrary nor capricious, and the Court denies Plaintiff's Motion for Judgment Reversing Decision of Plan Administrator on this ground.

## C.    EQUITABLE ESTOPPEL

13

Plaintiff says Defendant should be equitably stopped from denying him benefits.

Equitable estoppel may be a viable theory in ERISA welfare plan cases. *Armistead v*

*Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991).  The elements of an estoppel

claim are:

> (1) there must be conduct or language amounting to a representation of material
> fact;
> (2) the party to be estopped must be aware of the true facts;
> (3) the party to be estopped must intend that the representation be acted on, or
> the party asserting the estoppel must reasonably believe that the party to be
> estopped so intends;
> (4) the party asserting the estoppel must be unaware of the true facts; and
> (5) the party asserting the estoppel must reasonably or justifiably rely on the
> representation to his detriment. *Id.* at 1298.

Principles of estoppel, however, cannot be applied to vary the terms of

unambiguous plan documents; estoppel can only be invoked in the context of

ambiguous plan provisions. See *Fink v Union Central Life Ins. Co.*, 94 f.3d 489, 492 (8th

Cir. 1996); *Hudson v Delta Air Lines, Inc.*, 90 F.3d 451, 458 n. 12 (11th Cir. 1996).

Defendant says Plaintiff has no claim for equitable estoppel because the plan

has no ambiguity and there was no representation of material fact.  Plaintiff says he has

a viable equitable estoppel claim because the plan documents are ambiguous, he was

treated like a bridged employee for 10 years, and he relied on Defendant's conduct and

representations to his detriment.

In *Sprague v General Motors Corporation*, 133 F.3d 388 (6th Cir.1998), a class

action filed by early and general retired employees of GM, the plaintiffs alleged that GM

violated ERISA by denying them fully paid up lifetime healthcare benefits.  The district

court held that GM was estopped from enforcing its benefits plan because it

misrepresented the plan's terms.  The Sixth Circuit reversed, concluding that the

estoppel claims failed as a matter of law.  The court reasoned that the plan and most of the summary plan descriptions issued to the plaintiffs over the years unambiguously reserved to GM the right to terminate or amend the plan.  With the clear and unambiguous terms of the plan documents, the plaintiffs' reliance on statements allegedly suggesting the contrary was not reasonable, especially when GM never told the plaintiffs that their benefits were vested or fully paid up.

Similarly, in *Marks v Newcourt Credit Group*, 342 F.3d 444 (6th Cir. 2003), the Sixth Circuit affirmed the dismissal of the plaintiff's estoppel claim in an ERISA action. In *Marks*, the plaintiff contended he was entitled to certain benefits under a severance plan based on an alleged constructive termination, even though he missed the filing deadline.  The plaintiff argued that the defendant made fraudulent representations which lulled him into not exercising his rights under the plan. The district court concluded that estoppel could not override the clear terms of the plan.  The Sixth Circuit agreed that the plan provision, which required a participant to assert his rights by a specified date, was unambiguous.  Therefore, the plaintiff could not meet the elements of an equitable estoppel theory.

In contrast, Plaintiff presents evidence to support each of the five required elements.  He received the Template in December 1993 and various versions of the Booklet in 1993, 1994 and 1995.  The Template and Booklet contain conflicting provisions concerning bridging length of service in relation to benefits.  There is ambiguity whether an AEC employee's service date bridges 12 or 36 months after return to GM.  Plaintiff reasonably interpreted page 4 to mean that if he went back to GM within 3 years after termination by AEC other than for cause, his length of service

would be bridged and he would be entitled to employer-paid health care and life insurance coverage in retirement.  Moreover, after Plaintiff's termination from AEC in March 1994, he participated in GM's Opportunity Awareness Program to look for new employment within GM.  Plaintiff also pursued employment with Ford Motor Company in 1994, but decided it was more advantageous to obtain a position with GM because of the retirement healthcare benefits.

Upon his rehire to GM, he was treated as a transfer employee and given a relocation allowance.  In October 1995, he used part of the relocation allowance to purchase a condominium closer to the job site so he would have a shorter commute. Upon Plaintiff's return to GM on June 1, 1995, he was advised by Correll that it would be as if he never left and he would receive 5 weeks of vacation.  Correll says he only meant that statement to apply to vacation benefits.  However, the actions of Correll and other agents or representatives of Defendant suggest otherwise.

In March 1996, Plaintiff noticed an error on his benefits statement regarding the number of vacation weeks he would receive; the statement indicated that he would receive only 2 weeks of vacation each year.  He complained to Correll that he was to receive 5 weeks and was told to disregard the discrepancy.  Each year from 1995 through 2005, Plaintiff took five weeks of vacation, consistent with an employee with 20+ years of service.  The benefits statement continued to reflect the discrepancy.  Don Patnode, the General Supervisor of Finance, entered the system and manually changed the vacation time each year.

In March 2005, Patnode sent an email to Dennis Bauer inquiring how to permanently correct the computer calculation of time since it only showed 120 hours of

vacation; the email stated that Plaintiff should receive 200 hours of vacation each year with over 31 years of service.

From 1995 through 2005, Plaintiff received annual retirement projections which indicated that he was eligible for a "30 and out" retirement. A 2005 Fidelity statement reflects a hire date of June 9, 1965. All these things represented to Plaintiff that he was a bridged employee.

In February 2005, Plaintiff received a window retirement offer. The early retirement offer included 37 years and 2 months of credited service, which also made Plaintiff believe his length of service was bridged. March 17, 2005 was the first time Plaintiff learned he would not be eligible for a bridged length of service.

GM had an open door policy which encouraged employees to file appeals regarding benefits decisions. GM contracted with Bashen Consulting, a third party consulting company which handled such appeals. On June 24, 2005, Plaintiff filed an Open Door Appeal, challenging the decision not to provide employer-paid health care and life insurance during retirement. The consulting company conducted an investigation and issued a recommendation based on its interviews and documents submitted by Defendant. The GM Policy Committee ("Policy") reviewed the recommendation. However, no one in Policy could modify the policy or consider Plaintiff's unique set of facts and circumstances.

Sharon Ridgell, GM Senior Policy Consultant, admitted there were limited checks and balances between individual units and Policy for interpreting the templates applicable to returning employees; thus, if a unit did not have the template or did not interpret it properly, an employee could work a number of years believing he was

entitled to certain benefits before learning otherwise. Ridgell also testified that over the four to six years during which Bashen handled GM's appeals process, GM upheld all the consulting company's determinations for the Powertrain division. Thus, GM was aware that the appeals process was illusory and never could have aided someone in Plaintiff's position. Plaintiff was unaware of the true fact that he would never be able to have his employment bridged.

This Court finds that statements made by Defendant's agents and representatives and their conduct after Plaintiff became re-employed with GM materially represented to Plaintiff that his length of service would be bridged from June 9, 1965. Those material representations were embodied in documents provided to Plaintiff throughout his period of re-employment and Plaintiff was treated as a bridged employee since he took five weeks of vacation. Plaintiff reasonably relied on the ongoing representations to his detriment. He: (1) did not seek other employment with different compensation and benefits; (2) purchased a condominium closer to the job site to facilitate his commute; and (3) deferred his retirement date due to uncertainty about his healthcare and life insurance benefits. Accordingly, the equitable estoppel doctrine bars Defendant from denying Plaintiff a bridged length of service.

Defendant's Motion for Summary Judgment on this claim is denied and Plaintiff's Motion is granted.

## D.    MISREPRESENTATION

A claim based on the purported material misrepresentations of fiduciaries is a classic breach-of-fiduciary-duty claim under ERISA. *Pfahler v. Nat'l Latex Prods. Co.*,

517 F.3d 816 (6th Cir. 2007). An ERISA plan participant can seek equitable relief against his plan administrator under §502(a), 29 U.S.C. §1132(a), if he has been harmed by the administrator's breach of a fiduciary duty. *Varity Corp. v Howe*, 516 U.S. 489, 512 (1996). A fiduciary breaches his duties by providing plan participants with materially misleading information," even when he does so negligently, rather than intentionally. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). To establish a breach of fiduciary duty claim based upon misrepresentations regarding coverage under an ERISA plan, a plaintiff must show: (1) that the defendant acted in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to his detriment.

Defendant suggests that Plaintiff could not have reasonably relied on Correll's statement that he would return as if he never left, because the Template and the past editions of the Booklet specifically advised that consideration for bridging length of service would only be given if an employee was re-employed within 12 months following a special separation. Defendant neglects to recognize that as employer and plan administrator, it was acting in a fiduciary capacity. Defendant further fails to recognize that the Template also contained an ambiguous bridging policy provision. Moreover, as indicated in section D, the statements and conduct of Defendant's agents and representatives materially represented to Plaintiff that his length of service would be bridged. He relied on those misrepresentations to his detriment.

Defendant's Motion for Summary Judgment on this claim is denied and Plaintiff's Motion is granted.

### E. ATTORNEY FEES

The Sixth Circuit adopted a five-factor test to determine a party's entitlement to attorney's fees in ERISA cases. The factors include: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' position. *Armistead* at 12.

Defendant's refusal to bridge Plaintiff's length of service was culpable and in bad faith based on the fact that this long-term employee of more than 40 years never chose to leave GM and returned as soon as he could. GM personnel continually represented to Plaintiff through statements and documents that his length of service would be bridged. After he was told otherwise, GM's Open Door Appeal policy led him to believe that the appeals process might help.

GM is able to satisfy an award of attorney fees. Further, such an award will deter GM from treating loyal employees with disregard. It will also impress upon GM how necessary it is to honor the commitments it makes to employees. The fifth factor -- merit -- is in Plaintiff's favor; he prevailed on two claims. Plaintiff is entitled to an award of attorney fees.

The Court grants summary judgment in Plaintiff's favor on this claim.

### CONCLUSION

Plaintiff's Motion is **DENIED** in part and **GRANTED** in part; Defendant's Motion is

**DENIED**.

**IT IS ORDERED.**

                                                      /s/ Victoria A. Roberts
                                                     Victoria A. Roberts
                                                     United States District Judge

Dated: September 19, 2008

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 19, 2008.<br><br>s/Linda Vertriest<br>Deputy Clerk |